[No. 26544.   Department One.   June 2, 1937.]

C. E. MARTINSON, *Appellant*, v. CHARLES I. CARTER, *Respondent*.[1]

[1]Reported in 68 P. (2d) 1027.

*O. M. Pitzen* and *G. E. Peterson,* for appellant.

*W. Grant Armstrong,* for respondent.

MILLARD, J.—This action was brought by C. E. Martinson, who is engaged in business under the firm name of the M. & M. Logging Company, to recover damages alleged to have been sustained by reason of defendant's breach of contract to sell and deliver to the plaintiff thirty-five hundred fir ties.

Trial to the court resulted in a finding that the plaintiff failed to sustain the burden of proof that the defendant breached the alleged contract. From judgment of dismissal, the plaintiff has appealed.

The instrument upon which the appellant, who was the only witness in the trial of the cause, based his action for breach of contract, reads as follows:

> "M. & M. LOGGING CO.
> FIR, LARCH,
> HEMLOCK and CEDAR LOGS
> MINERAL, WASH.
> October 31st, 1935
> Sold to M. & M. LOGGING Co.,
> Shipped to Mineral, Wash.

"I hereby agree to furnish 3500 pcs. 8 x 8- 9′ Rough. One end sawed square. Said material to be SELECT STRUCTURAL DOUGLAS FIR BRIDGE MATERIAL—Per Pars. 218 W. C. L. A. Rls. No. 10. SAP NO DEFECT. *Cut free from heart.* Shipment to be made by November 28th. Sooner if possible.

"Price $11.00 FOB your truck at Mill. Inspection final at my mill. Settlement required, less 2%, for every 30,000 cut and inspected. Final Shipment to be made on or before Dec. 15, 1935.

> Yours truly,
> (Signed)   CHARLES I. CARTER.

"Subject to acts of God or any other act beyond my control."

The appellant testified that the respondent did not furnish the lumber described in the instrument quoted above. It clearly appears from the above quoted offer, and the appellant so testified, that it was incumbent upon the appellant to have his truck at respondent's mill and there take delivery of the lumber. While he had a truck standing about five hundred feet distant from respondent's mill, appellant never had a truck at respondent's mill ready to take delivery of the ties. The excuse of the appellant was that he was awaiting notification by the respondent that the material was ready for delivery, which notification he never received.

On November 4, 1935, four days after the signing of the writing quoted above, the appellant wrote the following letter to the respondent:

"If you will start right now and cut on that order I gave you, I can arrange to have cars spotted at Mayfield so that you can do the loading and hauling with your own trucks. The loading will be done in open cars and inasmuch as the material is inspected at your mill, it could be taken from the trucks direct onto the cars with the same handling. This offer is made with the further understanding that you will haull & load for $1.25 per. M. and that you will get $30,000' M. on a car and that this material will take tie rate out of Mayfield.

"I am doing this so as to thraw the hauling your way, as do not like to come in there with my trucks and put yours out of operation. Please let me know by return mail."

Under date of December 26, 1935 (eleven days subsequent to date final shipment was to be made under the terms of the offer of October 31, 1935, quoted above), the appellant wrote the following letter to the respondent:

"Will you kindly advise me as to what you have done and what you intend to do about the order you took for the 8 x 8 - 9' as per Standard grading Rule No. 10, Par. 218. The time for delivery of this material is long past due and I am hard pressed for delivery of this order. This may prove a very serious matter for both of us and I trust this will have the attention it deserves."

Appellant not only failed to sustain the burden of proof that the contract was breached; he very clearly showed there was no contract. The respondent offered, under date of October 31, 1935, to do a definite thing—furnish a certain number of pieces of lumber, delivery to be made to appellant's truck at respondent's mill. That offer was not unconditionally accepted by the appellant.

It should be borne in mind that, instead of acceptance of the offer of respondent, the appellant countered, November 4, 1935, with a proposal that the respondent haul the lumber in respondent's trucks and load the lumber on cars at Mayfield, that is, the respondent offered to deliver the lumber at one place, which offer was not accepted by appellant, who named or proposed another place for delivery. The counter-proposal was not accepted by respondent.

"An acceptance, to be effectual, must be identical with the offer and unconditional. Where a person offers to do a definite thing, and another accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat or it is a counter proposal, and in neither case is there an agreement. This is true, for example, where an acceptance varies from the offer as to time of performance, place of performance, price, quantity, quality, and in other like cases." 13 C. J. 281.

There was no contract between the parties on December 26, 1935, when appellant inquired of respond-

ent (there is no evidence of a reply to the inquiry) what the latter intended to do in the matter.

The judgment should be, and it is, affirmed.

MAIN, BLAKE, GERAGHTY, and ROBINSON, JJ., concur.

[1]Reported in 68 P. (2d) 1025.